IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| BERNICE LYNN WINTERMANTEL-BAPTISTA, aka, BERNICE LYN WINTERMANTEL-BAPTISTA, individually and as Guardian ad litem for Minor children, NAIA A., Born on February 6, 1994 and ANELA A., Born on March 23, 1995,<br><br>Plaintiffs,<br><br>vs.<br><br>JEAN HANOHANO, ROBERT HANOHANO, ADAM LIPKA, THOMAS ADRIANCE, and THE CITY AND COUNTY OF HONOLULU, a municipal corporation,<br><br>Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL NO.  05-00485 JMS/LEK<br><br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND IN THE ALTERNATIVE FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' COUNTER MOTION FOR REMAND |

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
DISMISS AND IN THE ALTERNATIVE FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFFS' COUNTER MOTION FOR REMAND

I.  INTRODUCTION

Honolulu Police Department ("HPD") Officer Adam Lipka, HPD

Officer Thomas Adriance, and the City and County of Honolulu (collectively,

"City Defendants") have moved the court to dismiss the First Amended Complaint filed by Bernice Lynn Wintermantel-Baptista (individually and as Guardian Ad Litem for her minor children). In the alternative, the City Defendants request that summary judgment be granted in their favor. The Plaintiffs, on the other hand, have filed a Counter Motion for Remand. Based on the following, the court GRANTS IN PART and DENIES IN PART the Motion to Dismiss and in the Alternative for Summary Judgment and DENIES the Counter Motion for Remand.

## II. BACKGROUND

On February 6, 2004, Jean Hanohano (Jean) filed a Petition for Ex Parte Temporary Restraining Order ("TRO") and for Injunction Against Harassment against Wintermantel-Baptista. The same day, the Petition was granted by the District Court of the First Circuit of the State of Hawaii; the TRO prohibited Wintermantel-Baptista from contacting Jean or "any person(s) residing at [Jean's] residence." Plaintiffs' Amended Concise Statement of Material Facts ("Plaintiffs' Concise"), Ex. 2. Two weeks later, on February 20, 2004, the District Court held a hearing on Jean's Petition. Wintermantel-Baptista left the courtroom before the conclusion of the proceedings (and, according to the Defendants, after being instructed to remain in the courtroom), and the District Court granted Jean's Petition. Wintermantel-Baptista did not receive a copy of the District Court's

February 20, 2004 order because she left the courtroom prior to the conclusion of the court proceedings.  Wintermantel-Baptista alleges that she did not receive a copy of this order until April 1, 2004.[1]

On March 17, 2004, Wintermantel-Baptista went to the house next door to Jean's house, purportedly at the direction of her case worker.  According to Wintermantel-Baptista, she approached a man in the yard without knowing that person's identity.  That person turned out to be Jean's brother (and Wintermantel-Baptista's husband), Robert Hanohano (Robert).  Wintermantel-Baptista contends that as soon as she saw that the person in the yard was Robert, she turned around and left.  She alleges that Jean called the police, after which Officers Adriance and Lipka arrested Wintermantel-Baptista for having violated the Injunction. Wintermantel-Baptista contends that, upon her arrest, Officer Adriance "pushed [her] head into the police car."  She further contends that Officers Adriance and Lipka "left [her] in the back of the police car with the windows all up in boiling hot sun where [she] thought [she] was going to pass out from smothering heat and lack of air while they laughed and talked story with [her] mother-in-law and sister-in-law, Defendant JEAN HANOHANO."  Plaintiffs' Concise, Exs. 9-10.

---

[1] On April 27, 2004, the District Court granted Wintermantel-Baptista's motion to set aside the Order granting Jean's Petition for an Injunction.

Wintermantel-Baptista contends that she was prosecuted for violating the TRO but that the criminal charges against her were dismissed on November 23, 2004 for lack of evidence.

Wintermantel-Baptista argues that the March 17, 2004 arrest was part of a larger pattern or practice of police behavior designed to harass her. She contends that the police selectively enforced laws against her so as to retaliate against her for filing complaints against Robert (Wintermantel-Baptista's husband and the Officers' friend) and his sister Jean. Specifically, Wintermantel-Baptista alleges that Officer Adriance threatened to arrest her for an outstanding traffic ticket (for not wearing her eyeglasses) if she filed a complaint against Jean; according to Wintermantel-Baptista, when she (Wintermantel-Baptista) filed a complaint against Jean, Officer Adriance in fact had her arrested (on February 4, 2004). Plaintiffs' Concise, Exs. 7, 9.

Wintermantel-Baptista alleges that the February 4, 2004 arrest was not the only evidence of police harassment: she alleges that, on July 28, 2004, Officer Adriance and six other police officers waited for her outside Wahiawa court and gave her six traffic tickets for non-moving violations. Plaintiffs' Concise, Ex. 7. She further alleges that her children were placed into foster care from May to October of 2005 and that this violated the children's Fourth

Amendment rights.  Plaintiffs' Concise, Exs. 6, 7.  Finally, Wintermantel-Baptista contends that the police unlawfully impounded her car; she argues that this unlawful impound constitutes conversion, a taking without just compensation, and a violation of her Fourth and Fifth Amendment rights.  *See* First Amended Complaint; Plaintiffs' Supplemental Memorandum.

Additionally, the Plaintiffs appear to argue that Naia A. and Anela A. were unlawfully placed in the foster care system in violation of their Fourth and Fifth Amendment rights.  Plaintiffs' Concise, Exs. 5, 7.

On July 7, 2005, Wintermantel-Baptista filed a Complaint in the District Court of the First Circuit of the State of Hawaii against Jean, Robert, Officer Adriance, Officer Lipka, and the City and County of Honolulu, and the case was thereafter removed to the United States District Court for the District of Hawaii.  On October 21, 2005, Officer Lipka, Officer Adriance, and the City and County of Honolulu ("City Defendants") moved to dismiss Wintermantel-Baptista's complaint.  The court heard from the parties on January 17, 2006, and the parties agreed that the most prudent course was to allow Wintermantel-Baptista to amend her Complaint and to deny the City Defendants' motion to dismiss without prejudice.  The court entered a written order to this effect on January 23, 2006.

On February 22, 2006, the Plaintiffs filed a First Amended

Complaint.  The City Defendants filed the instant motion on July 12, 2006; the

Plaintiffs filed their opposition, as well as a counter-motion for remand, on August

31, 2006.  The court heard arguments on the motions on September 18, 2006.

Based on the following, the court GRANTS IN PART and DENIES

IN PART the Motion to Dismiss and in the Alternative for Summary Judgment

and DENIES the Counter Motion for Remand.

### III.  STANDARDS OF REVIEW

A.    Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a

motion to dismiss a claim for "failure to state a claim upon which relief can be

granted[.]"  Fed. R. Civ. P. 12(b)(6).  When reviewing a motion to dismiss for

failure to state a claim upon which relief can be granted, a court takes the factual

allegations in the complaint as true and construes them in the light most favorable

to the plaintiff.  *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

"Conclusory allegations of law however, are insufficient to defeat a motion to

dismiss."  *Id.*  Under Rule 12(b)(6), a complaint should not be dismissed "'unless

it appears beyond doubt that the plaintiff can prove no set of facts in support of his

claim which would entitle him to relief.'"  *Balistreri v. Pacifica Police Dep't,* 901

F.2d 696, 699 (9th Cir. 1988) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Id.*

B.    Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986).  The burden initially lies with the moving party to show that there is no genuine issue of material fact.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). Nevertheless, "summary judgment is mandated if the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'"  *Broussard v. Univ. of Cal., at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999) (quoting *Celotex*, 477 U.S. at 322).

\\

\\

7

## IV.  <u>ANALYSIS</u>

The court has struggled to fully understand the legal basis of each of the Plaintiffs' claims:  the Plaintiffs' First Amended Complaint sets forth an extensive factual background without connecting these facts to particular legal theories, such that the court has strained to analyze the instant motions in a comprehensive manner.  Likewise, the City Defendants have failed to address each of the Plaintiffs' claims, and the court denies summary judgment as to several of these claims for the simple reason that the City Defendants have not met their burden of demonstrating the absence of a genuine issue of material fact.

The court first addresses the Plaintiffs' Counter Motion for Remand, followed by the Plaintiffs' argument that the City Defendants' Motion to Dismiss should be denied based on the law of the case doctrine.  The court then analyzes the Plaintiffs' constitutional claims and concludes that the City Defendants are entitled to dismissal or summary judgment as to some, but not all, of the Plaintiffs' constitutional claims. Thereafter, the court analyzes the Plaintiffs' state law claims, again granting the City Defendants' motion as to some (but not all) of the Plaintiffs' claims.

\\

\\

A.    <u>Remand</u>

The Plaintiffs allege that removal was improper for two reasons: first, because the individual defendants did not join the petition for removal (instead, the individual defendants merely "consented" to removal); and second, because the City and County of Honolulu was the party filing for removal even though there were (and are) no federal claims against the City.

The Plaintiffs' Counter Motion for Remand is denied because it is untimely.  Pursuant to 28 U.S.C. § 1447(c), a motion for remand based on defects in the petition (other than subject matter jurisdiction[2]) must be filed within 30 days of removal.  The City and County of Honolulu filed a notice of removal on August 2, 2005, and the  Plaintiffs did not file a motion for remand until August 31, 2006.  Plaintiffs' motion for remand is therefore untimely.

The court likewise rejects the Plaintiffs' suggestion that this court lacks jurisdiction because there is no federal cause of action against the City and County of Honolulu (and because the City was the only defendant seeking removal).  *Cf. Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005) (holding that, where at least one plaintiff satisfies diversity jurisdiction's amount-

---

[2] The Plaintiffs' Complaint and First Amended Complaint raise claims under a federal statute, 42 U.S.C. § 1983; consequently, the court has subject matter jurisdiction over this case.

in-controversy requirement, 28 U.S.C. § 1367 authorizes supplemental jurisdiction

over the claims of other plaintiffs not meeting the amount-in-controversy

requirement).

B.    Law of the Case

The Plaintiff argues that the motion to dismiss should be dismissed

based on "law of the case" because the court denied the City Defendants' Motion

to Dismiss in January of this year.  This argument is without merit.  At the

previous hearing, the parties agreed that the Plaintiff needed to amend her

complaint and that the City Defendants' motion to dismiss should be denied

without prejudice.  The law of the case doctrine simply has no application to this

case.

C.    Constitutional Claims

The Plaintiffs argue that the Defendants conspired to violate the

Plaintiffs' constitutional rights.  Specifically, the Plaintiffs argue that the

Defendants conspired to violate the Plaintiffs' rights under the Fourth, Fifth, and

Fourteenth Amendments to the United States Constitution.  The court concludes

that the City Defendants are entitled to dismissal or summary judgment as to some,

but not all, of these claims.

### 1.    Fourth Amendment

The Plaintiffs argues that the Defendants violated their Fourth Amendment rights in several ways.  First, they argue that the police did not have probable cause to arrest Wintermantel-Baptista:  they contend that the TRO had expired on its own terms prior to Wintermantel-Baptista's arrest, such that the arrest (for having violated the TRO) could not have been valid; they also argue that Wintermantel-Baptista could not have been arrested pursuant to the Injunction issued February 20, 2004, because she never received notice of this Injunction. Second, they argue that Wintermantel-Baptista's children were unlawfully placed in foster care.  Third, they allege that the police unlawfully impounded Wintermantel-Baptista's car.  The court addresses each of these issues in turn.

#### a.    March 17, 2004 arrest

As discussed below, with regard to the Plaintiffs' claim that Wintermantel-Baptista was unlawfully arrested on March 17, 2004, the court GRANTS summary judgment in favor of the City Defendants because Officers Lipka and Adriance had probable cause to arrest Wintermantel-Baptista.

\\

\\

\\

11

### i.    The TRO did not "expire," but instead was converted into an Injunction

Wintermantel-Baptista states that she was served with the TRO on February 18, 2004, and that the TRO expired on its own terms on March 5, 2004. She argues that, because she was arrested on March 17, 2004 pursuant to the expired TRO (but was not arrested pursuant to the Injunction issued on February 20, 2004), there was no probable cause for her arrest.

This argument is nonsensical.  The TRO and Injunction are both part of the same case:  the restrictions imposed by the TRO were the same as those imposed by the Injunction.  When an individual files for a TRO, she or he petitions the court for an ex parte temporary order; if the court grants the petition, the respondent receives notice and an opportunity to be heard.  If the court rules in favor of the petitioner at the hearing, the court converts the TRO into an injunction and extends it for up to three years.  HRS § 604-10.5(f).[3]  Wintermantel-Baptista

---

[3] HRS § 604-10.5(f) provides in relevant part:

> A temporary restraining order that is granted under this section shall remain in effect at the discretion of the court for a period not to exceed ninety days from the date the order is granted. A hearing on the petition to enjoin harassment shall be held within fifteen days after the temporary restraining order is granted. In the event that service of the temporary restraining order has not been effected before the date of the hearing on the petition to enjoin, the court may set a new date for the hearing; provided that the new date shall not exceed ninety days from the date the temporary restraining order was granted.

(continued...)

contends that the TRO and the Injunction in this case somehow stem from different court proceedings, when in fact they simply represent different stages of the same court proceeding.  Wintermantel-Baptista's argument that the TRO "expired," thus depriving the police of probable cause to arrest her for a violation thereof, is absurd:  the TRO did not expire, but instead was extended for a period of three years at the February 20, 2004 hearing.  Thus, there is no question that there was a valid Injunction in place against Wintermantel-Baptista at the time of her arrest.

\\

\\

\\

---

(...continued)

      The parties named in the petition may file or give oral responses explaining, excusing, justifying, or denying the alleged act or acts of harassment. The court shall receive all evidence that is relevant at the hearing, and may make independent inquiry.

      If the court finds by clear and convincing evidence that harassment as defined in paragraph (1) of that definition exists, it may enjoin for no more than three years further harassment of the petitioner, or that harassment as defined in paragraph (2) of that definition exists, it shall enjoin for no more than three years further harassment of the petitioner; provided that this paragraph shall not prohibit the court from issuing other injunctions against the named parties even if the time to which the injunction applies exceeds a total of three years.

### ii.      Wintermantel-Baptista had notice of the Injunction

Wintermantel-Baptista next argues that she lacked notice of the Injunction and that the Injunction was therefore invalid, thus depriving the police of probable cause to arrest her.  This argument is also without merit.

HRS § 604-10.5(f) provides as follows:  "Any order issued under this section shall be served upon the respondent.  For the purposes of this section, 'served' shall mean actual personal service, service by certified mail, *or proof that the respondent was present at the hearing in which the court orally issued the injunction*."  (Emphasis added.)  Wintermantel-Baptista admits that she was at the February 20, 2004 hearing in which the court issued the Injunction.  Regardless of her reasons for leaving the hearing, she admits that she was present at the hearing.  Therefore, according to HRS § 604-10.5(f), Wintermantel-Baptista had notice of the February 20, 2004 Injunction.  Her argument to the contrary is without merit.

### iii.     The police had probable cause to arrest Wintermantel-Baptista

As the Ninth Circuit recently stated:

An arrest is constitutionally valid if the arresting officers had probable cause to make the arrest. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).  Officers have probable cause to make an arrest when:

> at that moment the facts and circumstances within their
> knowledge and of which they had reasonably trustworthy
> information were sufficient to warrant a prudent man in
> believing that the petitioner had committed or was
> committing an offense.

*United States v. Dorsey*, 418 F.3d 1038, 1042 (9th Cir. 2005) (quoting *Beck v. Ohio,* 379 U.S. 89, 91 (1964)).

There is no genuine issue of material fact as to the existence of probable cause to arrest Wintermantel-Baptista, inasmuch as she violated the terms of a valid injunction. The Plaintiff has proffered no facts in support of her contention that the police lacked probable cause to arrest her for this alleged violation, other than her contentions, refuted above, that the TRO had expired and that she had not been notified of the Injunction. Therefore, the court GRANTS the City Defendants' motion for summary judgment as to this claim.

b.   Unlawful placement in foster home

With regard to the claim that the children were unlawfully placed in foster care, the court DENIES WITHOUT PREJUDICE the City Defendants' motion because the City Defendants have put forth no evidence or argument to support their request for dismissal or summary judgment.

15

c.    <u>Unlawful impound of Wintermantel-Baptista's car</u>

With regard to the claim that the police unlawfully seized

Wintermantel-Baptista's car, the court DENIES WITHOUT PREJUDICE the City

Defendants' motion for summary judgment.

The Plaintiffs' First Amended Complaint alleges that Wintermantel-

Baptista had paid for the car but that "title . . . had been put in the name of

Defendant LARSON for insurance purposes."  First Amended Complaint at 7.

The City Defendants argue that this fact precludes Wintermantel-Baptista from

recovering against the City Defendants.  The City Defendants base their argument

on HRS § 286-52(e), which provides in relevant part:

> Until the director of finance has issued the new certificate of
> registration and certificate of ownership as in subsection (d)
> provided, delivery of such vehicle shall be deemed not to have
> been made and title thereto shall be deemed not to have passed,
> and the intended transfer shall be deemed to be incomplete and
> not to be valid or effective for any purpose, notwithstanding
> any provision of the Uniform Commercial Code . . . .

The first time the City Defendants raised this argument was in their

Supplemental Reply Memorandum to the Plaintiffs' Supplemental Memorandum;

the Plaintiffs have not had an opportunity to respond to this argument.  The court

will not base its ruling on an argument raised in this fashion.  *Cf.  Simpson v. Lear

Astronics Corp.*, 77 F.3d 1170, 1176 n. 4 (9th Cir. 1995) (holding that the court

16

cannot grant a motion based on a new argument presented for the first time in a reply brief).[4]  To be clear, the court is not suggesting in any way that Wintermantel-Baptista's claim either has merit or lacks merit; the court is only stating that the parties have not fully briefed this issue and the court declines to address it without further briefing from the parties.

### 2.    Fifth Amendment

The Plaintiffs have not clearly articulated the basis (or bases) for their Fifth Amendment claims.  To the extent the Plaintiffs argue due process or equal protection violations, those claims are DISMISSED because the federal government is not a defendant.  *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) ("The Due Process Clause of the Fifth Amendment and the equal protection component thereof apply only to actions of the federal government--not to those of state or local governments.").   To the extent that the Plaintiffs allege a Fifth Amendment takings claim (by unlawfully impounding Wintermantel-Baptista's car), this claim survives the City Defendants' motion for the reasons discussed *supra*.

---

[4] For example, neither party briefed the applicability (if any) of *Hawaiian Insurance & Guaranty Co., Ltd. v. Financial Security Insurance Co.*, 72 Haw. 80, 89, 807 P.2d 1256, 1260 (1991) (holding that, in the insurance context (and based on the specific facts of that case), "HRS § 286-52(e) is not determinative of ownership for purposes of resolving coverage disputes under automobile insurance policies").

### 3. Fourteenth Amendment

Again, the Plaintiffs have not clearly articulated the basis (or bases) for their Fourteenth Amendment claims. The court will attempt to untangle the Plaintiffs' Fourteenth Amendment claims.

Wintermantel-Baptista's first claim under the Fourteenth Amendment is that she was deprived of liberty without due process (based on the false arrest claim discussed *supra*). This argument is without merit, inasmuch as the police had probable cause to make the arrest. Consequently, the City Defendants' motion is GRANTED as to this claim.

Wintermantel-Baptista's second claim rests on her allegation that, after her arrest on March 17, 2004, the arresting officers placed her in a sealed car in the sun and that she suffered in the heat while the officers joked around with Jean Hanohano. The City Defendants' motion does not address this claim, and the court has no information as to the amount of time Wintermantel-Baptista was in the car. From the record, the court does not know whether Wintermantel-Baptista was in the car for two minutes or two hours; under some circumstances, the police officers may be entitled to qualified immunity, but the court simply has no information with which to make this determination. Consequently, the City Defendants' motion is DENIED WITHOUT PREJUDICE as to this claim.

Wintermantel-Baptista's third claim is based on the equal protection clause of the Fourteenth Amendment:  she alleges that Officers Adriance and Lipka were friends with her husband and that the Officers singled her out for harassment based on this friendship.  She argues that the Officers acted with malice and that she is a "class of one" entitled to protection under the Fourteenth Amendment.   The City Defendants, on the other hand, argue that they are entitled to summary judgment because there is no evidence that the Officers treated similarly situated individuals differently and because there is no evidence of malice.  The City Defendants' motion is DENIED WITHOUT PREJUDICE as to this claim.  As the Ninth Circuit explained:

> The Equal Protection Clause ensures that all persons similarly situated should be treated alike.  The equal protection guarantee protects not only groups, but individuals who would constitute a class of one.  Where, as here, state action does not implicate a fundamental right or a suspect classification, the plaintiff can establish a "class of one" equal protection claim by demonstrating that it has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.  Where an equal protection claim is based on selective enforcement of valid laws, a plaintiff can show that the defendants' rational basis for selectively enforcing the law is a pretext for an impermissible motive.

*Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004) (citations and internal quotation signals omitted).  Wintermantel-Baptista alleges that

Officer Adriance threatened to arrest her for an outstanding traffic ticket (for not

wearing her eyeglasses) if she filed a complaint against Jean; that she

(Wintermantel-Baptista) in fact filed a complaint against Jean; and that Adriance

had Wintermantel-Baptista arrested on February 4, 2004.  Plaintiffs' Concise, Exs.

7, 9.  Wintermantel-Baptista further alleges that, on July 28, 2004, Adriance and

six other police officers waited for her outside Wahiawa court and gave her six

traffic tickets for non-moving violations.  Plaintiffs' Concise, Ex. 7.  The Plaintiffs

further allege that the Defendants conspired to have Wintermantel-Baptista's

children taken from the home and that the Defendants were motivated by malice

and personal animus.  First Amended Complaint at 9-10.

   In short, the Plaintiffs have alleged that the Defendants acted with

malice (such that the Defendants had no rational basis for the selective

enforcement of laws against the Plaintiffs).  The City Defendants, however, argue

that this allegation alone is insufficient to survive either a motion to dismiss or a

motion for summary judgment.  The City Defendants first argue that the Plaintiffs'

claim should be dismissed because the Plaintiffs have not alleged that other

similarly situated individuals were treated differently.  The City Defendants then

argue that the court should grant summary judgment because the Plaintiffs have

not put forth clear and convincing evidence of the Defendants' malice.

The court denies the City Defendants' motion without prejudice because neither side has fully briefed and argued these issues.  Although the Plaintiffs alleged an equal protection claim in their First Amended Complaint, they did not articulate the "class of one" theory until they submitted their Supplemental Brief *after* the September 18, 2006 hearing.[5]  The City Defendants, therefore, did not raise their arguments as to the inadequacy of the "class of one" theory until they submitted their Supplemental Memorandum on October 2, 2006.[6]  In short, as to the Plaintiffs' equal protection claim, the court has not had the benefit of the argument-opposition-reply structure typical of most motions.  As a result, the Plaintiffs have not had an opportunity to argue to the court as to (1) whether there are sufficient facts in the First Amended Complaint to demonstrate that Wintermantel-Baptista was treated differently than similarly situated individuals or (2) whether the City Defendants are correct in arguing that the Plaintiffs have failed to set forth sufficient facts regarding the Officers' personal animosity towards Wintermantel-Baptista.

---

[5] The Plaintiffs' memorandum in opposition to the City Defendants' motion alludes to this theory but neither articulates the elements of a "class of one" equal protection claim nor explains how the Plaintiffs' claim satisfies these elements.

[6] The City Defendants did, however, submit declarations from Officers Lipka and Adriance (with their initial motion) in which the Officers declared that they did not act maliciously.

Based on the foregoing, the City Defendants' motion is GRANTED

IN PART and DENIED WITHOUT PREJUDICE IN PART as to the Plaintiffs'

Fourteenth Amendment claims. The court hereby EXTENDS the deadline for

filing dispositive motions until January 2, 2007.

### 4. Qualified immunity

The City Defendants argue that, even if the Plaintiffs have set forth

sufficient facts to survive summary judgment, Officers Lipka and Adriance are

nevertheless entitled to summary judgment based on qualified immunity. As to

the Plaintiffs' constitutional claims that survive this Order -- the Fourth

Amendment claim relating to the children's placement in foster care, the Fourth

and Fifth Amendment claims relating to the impound of Wintermantel-Baptista's

car, and the Fourteenth Amendment claims (the due process claim, relating to

Wintermantel-Baptista's being locked in the back of the police car, and the equal

protection claim, relating to "class of one" harassment) -- the court rejects the City

Defendants' qualified immunity argument without prejudice to their ability to raise

this argument again in future pleadings.

Where a defendant seeks qualified immunity, "a ruling on that issue

should be made early in the proceedings" because the privilege provides "an

immunity from suit rather than a mere defense to liability." *Saucier v. Katz*, 533

U.S. 194, 200-01 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

> In ruling on a qualified immunity defense, a court must consider two questions. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This first prong of qualified immunity thus mirrors the substantive summary judgment decision on the merits. Second, if the plaintiff has alleged a deprivation of a constitutional right, a court "is to ask whether the right was clearly established." *Id.* The plaintiff bears the burden of showing that the right at issue was clearly established under this second prong. *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993).

*Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002). The Supreme Court has

recently clarified this test:

> When confronted with a claim of qualified immunity, a court must ask first the following question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S., at 201, 121 S.Ct. 2151. . . . [C]laims of excessive force are to be judged under the Fourth Amendment's " 'objective reasonableness' " standard. [*Graham v. Connor*, 490 U.S. 386,] 388, 109 S.Ct. 1865.
> . . . .
> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted. *Saucier v. Katz*, 533 U.S., at 206, 121 S.Ct. 2151 (qualified immunity operates "to protect officers from the sometimes 'hazy border between excessive and acceptable

23

force' "").  Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.  If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

It is important to emphasize that this inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.*, at 201, 121 S.Ct. 2151.  As we previously said in this very context:

> "[T]here is no doubt that *Graham v. Connor*, *supra*, clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. Yet that is not enough. Rather, we emphasized in *Anderson* [v. *Creighton*,] 'that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' 483 U.S. [635,] 640[, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)]. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*, at 201-202, 107 S.Ct. 3034.

*Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004) (per curiam) (some alterations in original and some added).

Again, the court simply has insufficient information upon which to rule on the qualified immunity argument.  The City Defendants

have not addressed the Plaintiffs' claim regarding the children's placement

in foster care, and the Plaintiffs' standing to raise constitutional complaints

surrounding the impound of the car is unclear; and the Plaintiffs' Fourteenth

Amendment claim is similarly vague.  Consequently, the court rejects the

City Defendants' qualified immunity argument without prejudice to their

ability to raise this argument again in future pleadings.

D.      <u>Conspiracy</u>

The Plaintiffs allege a state-law claim for conspiracy; whether

the Plaintiffs also intend to bring a claim for conspiracy under federal law is

unclear.

The City Defendants' motion is again DENIED WITHOUT

PREJUDICE.  The viability of the Plaintiffs' remaining constitutional and

statutory claims is not entirely clear, such that the viability of the Plaintiffs'

conspiracy claim(s) is similarly hazy.  *Burns v. County of King*, 883 F.2d

819, 821 (9th Cir. 1989) ("To state a claim for a conspiracy to violate one's

constitutional rights under section 1983, the plaintiff must state specific

facts to support the existence of the claimed conspiracy.").

\\

\\

E.      State Constitutional Claims

The Plaintiffs allege that the Defendants violated article I,

sections 5[7] and 7[8] of the Hawaii Constitution.  The City Defendants argue

that the Plaintiffs' claims based on the Hawaii Constitution should be

dismissed for the reasons applied to the federal constitutional claims.  The

court agrees with the City Defendants' logic:  the court's rulings with

respect to the Fourth Amendment apply equally to the Plaintiffs' claims

under Article I, section 7.  *See State v. Kealoha*, 62 Haw. 166, 169-70, 613

P.2d 645, 648 (1980) ("[A]s Fourth Amendment protections against

unreasonable searches and seizures and the right to have unlawfully seized

evidence excluded from trial have been incorporated into the applicable

---

[7] Article I, section 5 of the Hawaii Constitution provides:

No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of the person's civil rights or be discriminated against in the exercise thereof because of race, religion, sex or ancestry.

[8] Article I, section 7 of the Hawaii Constitution provides:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted.

26

section of our constitution, we are guided here by relevant decisions of the

Supreme Court of the United States.").

Article I, section 5 contains language similar to that in the

Fourteenth Amendment to the United States constitution; accordingly, the

City Defendants' motion is GRANTED to the extent the Plaintiffs' article I,

section 5 claim is based on the March 17, 2004 arrest and DENIED

WITHOUT PREJUDICE in all other respects.

F.    Intentional Infliction of Emotional Distress

The City Defendants argue that the Plaintiffs have failed to

present sufficient facts to survive summary judgment.  Given the record

currently before the court, however, the court concludes that the City

Defendants have not met their burden of demonstrating the absence of a

genuine issue of material fact.  Consequently, the City Defendants' motion

is DENIED WITHOUT PREJUDICE as to this claim.

G.    Negligent Infliction of Emotional Distress

To maintain a claim for negligent infliction of emotional

distress ("NIED") under Hawaii law, the Plaintiffs must demonstrate:

(1) that the City Defendants engaged in negligent conduct; (2) that the

Plaintiffs suffered serious emotional distress; and (3) that the City

Defendants' negligent conduct was a legal cause of the serious emotional distress. *Mukaida v. Hawaii*, 159 F. Supp. 2d 1211, 1239 (D. Haw. 2001). A cognizable claim for negligent infliction of emotional distress under Hawaii law also requires a physical injury to either a person or property. *Id.*; *Calleon v. Miyagi*, 76 Haw. 310, 320, 876 P.2d 1278, 1288 (1994). If a negligent infliction of emotional distress claim is premised on an injury solely to property or material objects, a plaintiff would also have to show a resulting physical injury or a mental illness. *Mukaida*, 159 F. Supp. 2d at 1239 n.21 (citing HRS § 663-8.9).

The Plaintiffs have not alleged physical injury, nor have they set forth any facts that demonstrate a resulting physical injury or mental illness. At best, the Plaintiffs make conclusory allegations of the City Defendants' negligence without establishing any of the elements necessary to sustain the claim. The Plaintiffs have not plead facts sufficient to state a claim for NIED. Therefore, the Plaintiffs' NIED claim is DISMISSED.

H.    <u>False Arrest, False Imprisonment, and Malicious Prosecution</u>

Wintermantel-Baptista's claims for false arrest, false imprisonment, and malicious prosecution are all based on her belief that her arrest on March 17, 2004 was unlawful. Wintermantel-Baptista's claims for

false arrest, false imprisonment, false prosecution, and malicious

prosecution[9] all fail, however, because the police had probable cause to

arrest her.  *Reed v. City & County of Honolulu*, 76 Haw. 219, 230, 873 P.2d

98, 109 (1994) ("The determination of probable cause is a defense to the

common law claims of false arrest, false imprisonment, and malicious

prosecution.").  Therefore, the court GRANTS the City Defendants' motion

for summary judgment as to these claims.

I.    Conversion

          The Plaintiffs argue that Larson and Officers Adriance and

Lipka have wrongfully withheld possession of Wintermantel-Baptista's car

since October 2004.  For the reasons set forth *supra*, the City Defendants'

motion is DENIED WITHOUT PREJUDICE as to this claim.

\\

\\

\\

---

[9] As an initial matter, the court notes that "false arrest" and "false imprisonment" are not separate claims under Hawaii law.  *Reed v. City & County of Honolulu*, 76 Haw. 219, 230, 873 P.2d 98, 109 (1994) ("Because a person who is falsely arrested is at the same time falsely imprisoned, false arrest and false imprisonment as tort claims are distinguishable only in terminology." (Citations and internal quotation signals omitted.)).  Similarly, the court finds nothing to indicate that there are separate claims for relief based on "false prosecution" and "malicious prosecution."

J.   <u>Negligence</u>

Neither party addresses this claim in its briefing.[10]

Consequently, the City Defendants' motion is DENIED WITHOUT

PREJUDICE as to this claim.

K.   <u>Respondeat Superior</u>

The Plaintiffs' respondeat superior claim against the City (that

the City is liable for the Officers' actions) is DISMISSED as to the

Plaintiffs' federal claims.  The City cannot be held liable under §§ 1981,

1983, 1985, or 1986 simply on the theory of respondeat superior; instead,

the Plaintiffs must demonstrate a direct connection between a City policy or

custom and the harm suffered.  *See Monell v. Dep't of Social Servs.*, 436

U.S. 658, 690 (1978); *see also Ivey v. Bd. of Regents*, 673 F.2d 266, 268

(9th Cir. 1982) ("The general assertion that a municipality gives monetary

support or intervenes in the operations of a separate educational institution

with no showing of a direct connection between the municipality's actions

and the alleged discrimination is insufficient to state a claim under §§ 1981,

1983, 1985(3) or 2000e."); *Luke v. Abbott*, 954 F. Supp. 202, 202 n.1 (C.D.

---

[10] The City Defendants set forth the elements of a negligence claim, but they fail to articulate the reasons why summary judgment or dismissal is warranted.

Cal. 1997) ("The *Monell* municipal liability doctrine not only applies to § 1983 cases, but also applies to conspiracy claims under 42 U.S.C. §§ 1985(3) and 1986.").  The Plaintiffs do not allege that the City has any such policy, such that the claim is dismissed as to the Plaintiffs' federal claims.

As to the Plaintiffs' state law claims, the City Defendants concede that the City can be held liable for the torts of its employees under a theory of respondeat superior.  City Defendants' Motion at 25.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, this court GRANTS IN PART and DENIES IN PART the City Defendants' Motion to Dismiss.  The court rules as follows:

   (1)   the court GRANTS the City Defendants' motion for summary judgment as to:  (a) the Plaintiffs' Fourth Amendment claim (based on the March 17, 2004 arrest); (b) the Plaintiffs' corresponding claims for false arrest, false imprisonment, and malicious prosecution; (c) the Plaintiffs' Fifth Amendment claim for due process and equal protection violations; (d) the Plaintiffs' article I, section 7 claim (to the extent the claim is

based on the March 17, 2004 arrest); (e) the Plaintiffs' claim

for negligent infliction of emotional distress; and (f) the

Plaintiffs' claim for respondeat superior liability against the

City based on the § 1983 claims against Officers Adriance and

Lipka;

(2)     the court DENIES WITHOUT PREJUDICE the City

Defendants' motion as to:  (a) the Plaintiffs' remaining Fourth

Amendment claims (based on the impound of Wintermantel-

Baptista's car and the placement of Wintermantel-Baptista's

children in foster care); (b) the Plaintiffs' remaining Fifth

Amendment claim (taking without just compensation); (c) the

Plaintiffs' Fourteenth Amendment claims for due process

(being locked in the police car) and equal protection ("class of

one" harassment); (d) the Plaintiffs' remaining article I, section

7 claim (based on the impound of Wintermantel-Baptista's car

and the placement of Wintermantel-Baptista's children in foster

care); (e) the Plaintiffs' article I, section 5 claims for due

process (being locked in the police car) and equal protection

("class of one" harassment); (f) the Plaintiffs' claims for

conspiracy, conversion, negligence, and intentional infliction of emotional distress;

(3)    the court DENIES the Plaintiffs' Counter Motion for Remand; and

(4)    The court EXTENDS the deadline for filing dispositive motions until January 2, 2007 and directs the parties to schedule a status conference with Magistrate Judge Kobayashi to continue the trial date and all other dates associated with the current trial date.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 23, 2006.



J. Michael Seabright
United States District Judge

*Wintermantel-Baptista v. Hanohano et al.*, Civ. No. 05-00485JMS/LEK, Order Granting in Part and Denying in Part Motion to Dismiss and in the Alternative for Summary Judgment and Denying Plaintiffs' Counter Motion for Remand