IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| BERNICE LYNN WINTERMANTEL-BAPTISTA, aka, BERNICE LYN WINTERMANTEL-BAPTISTA, individually and as Guardian ad litem for Minor children, NAIA A., Born on February 6, 1994 and ANELA A., Born on March 23, 1995, | ) ) ) ) ) ) ) ) | CIVIL NO.  05-00485 JMS/LEK |
| Plaintiffs, | ) ) | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS |
| vs. | ) ) ) | THOMAS ADRIANCE, ADAM LIPKA, AND THE CITY AND COUNTY OF HONOLULU'S |
| JEAN HANOHANO, ROBERT HANOHANO, BARBARA LARSON, THOMAS ADRIANCE, ADAM LIPKA, and THE CITY AND COUNTY OF HONOLULU, a municipal corporation, | ) ) ) ) ) ) ) ) | MOTION FOR SUMMARY JUDGMENT |
| Defendants. | ) ) | |
| _____ | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS THOMAS ADRIANCE, ADAM LIPKA, AND THE CITY AND COUNTY OF HONOLULU'S MOTION FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

Honolulu Police Department ("HPD") Officer Thomas Adriance

("Adriance"), HPD Officer Adam Lipka ("Lipka"), and the City and County of

Honolulu (collectively "City Defendants") move the court for summary judgment as to Bernice Lynn Wintermantel-Baptista's ("Wintermantel-Baptista") First Amended Complaint.  For the following reasons, the court finds that the police conduct in this case did not deprive Wintermantel-Baptista or her children of their Fourth, Fifth, or Fourteenth Amendment rights and therefore GRANTS the City Defendants' Motion for Summary Judgment as it relates to those claims.  The court declines to exercise supplemental jurisdiction over the remaining state law claims, and REMANDS them to the District Court of the First Circuit Court, Wahiawa Division, State of Hawaii.

## II.  **BACKGROUND**

**A.        Factual Background**

Wintermantel-Baptista filed suit individually and as Guardian ad litem for minor children against Jean Hanohano ("Jean"), Robert Hanohano ("Robert"), Barbara Larson ("Larson"), Adriance, Lipka, and the City and County of Honolulu alleging violations of her federal and state constitutional rights as well as various state law claims.  Wintermantel-Baptista is of German-Italian ancestry, born in Pennsylvania, and raised in Michigan.  She is married to Jesse Baptista ("Jesse") who is of Filipino, Chinese, and Hawaiian ancestry.  Jesse's sister, Jean, is married to Robert who is of Hawaiian or "local" ancestry.  Robert is

friendly with Adriance, who is of Portugese or "local" ancestry, and Lipka who is "local."

In general, Wintermantel-Baptista alleges that the police, including Adriance and Lipka, engaged in a variety of acts to deprive her of her constitutional rights. Wintermantel-Baptista's specific allegations are broad, not well-defined, and cover several months. The following is a summary of her allegations.[1]

### 1.    Failure to Respond to Allegations of Spousal Abuse

In July 2003, Jesse apparently abused Wintermantel-Baptista. Larson called to report the spousal abuse. According to Wintermantel-Baptista, Adriance and the other responding officers failed to interview Wintermantel-Baptista and neglected to file a spousal abuse complaint on her behalf. Instead, Adriance allegedly instructed Larson to refrain from making any further complaints against Jesse on behalf of Wintermantel-Baptista.

On April 20, 2005, Wintermantel-Baptista alleges that Jesse again assaulted her, forcing her to leave her home and take her children to a shelter for abused women and children. She claims that she was hesitant to file a complaint

---

[1] This summary of allegations is taken from Wintermantel-Baptista's First Amended Complaint and to a lesser degree from declarations and exhibits submitted by the parties. Wintermantel-Baptista's allegations differ considerably from the admissible evidence she has submitted in opposition to the motion for summary judgment.

against Jesse given the police's purported failure to respond to her previous complaints and her fears that Adriance would place her children in Child Protective Services ("CPS") custody if she filed a report of spousal abuse. Wintermantel-Baptista did file a complaint against Jesse on April 21, 2005. However, she alleges that the HPD failed to take any action against Jesse, despite the fact that she told them where he could be found.

On May 15, 2005, Wintermantel-Baptista alleges that Jesse assaulted her again. Wintermantel-Baptista reported the abuse to the HPD on May 16, 2005 but alleges that nothing was done to investigate her complaint. On May 19, 2005, Wintermantel-Baptista alleges that Jesse abused her again, this time resulting in more serious injuries. She filed a police report about the abuse on May 21, 2005, and a warrant for Jesse's arrest was issued on May 27, 2005.

### 2.   *Failure to Provide Police Escort to Collect Belongings*

On October 27, 2003, Larson evicted Wintermantel-Baptista and her children from their home at 59-420 Pupukea. After Larson obtained a restraining order preventing Wintermantel-Baptista from returning to the premises, Wintermantel-Baptista obtained a court order requiring Larson to make Wintermantel-Baptista's property available for her to collect on November 9, 2003 between the hours of 9:00 a.m. to 11:00 a.m.. Wintermantel-Baptista was to

recover her property accompanied by a police escort.  At 8:30 a.m. on November

9, 2003, Wintermantel-Baptista requested a police escort.  She waited until 12:30

p.m. when she was able to flag down Police Officer Bobby Henderson who was

passing by.  Officer Henderson agreed to provide a 10 minute escort to 59-420

Pupukea.  Wintermantel-Baptista was unable to recover all of her belongings

during this 10 minute period and Larson subsequently disposed of the remainder

of Wintermantel-Baptista's property.

### 3.    *The February 4, 2004 Arrest*

Wintermantel-Baptista alleges that on February 4, 2004, she drove to

239 Waena Street to pick up her husband, Jesse.  Once there, however, she states

that Jean "came running out of the house" shouting a racial epithet and threatening

to beat her, and that Jean attempted to climb in through the back window of

Wintermantel-Baptista's car, at which point Wintermantel-Baptista drove away

and called the police.  Officers Lipka and Adriance were among those who

responded to Wintermantel-Baptista's call.  Wintermantel-Baptista claims that

instead of properly handling her complaint, Adriance threatened to arrest her for

an outstanding traffic warrant for failing to wear her eyeglasses if she filed a

complaint against Jean.  Despite this threat, Wintermantel-Baptista further states

that she went to the police station to press charges against Jean[2] and was

subsequently arrested on the outstanding warrant.

### 4.   The March 17, 2004 Arrest

On February 6, 2004, Jean filed a Petition for Ex Parte Temporary

Restraining Order ("TRO") and for an Injunction Against Harassment against

Wintermantel-Baptista.  The District Court of the First Circuit of the State of

Hawaii ("State District Court") granted the TRO which prohibited Wintermantel-

Baptista from contacting Jean or "any person residing at [Jean's] residence."  *See*

Defs'. Ex. C.  On February 20, 2004, the State District Court held a hearing and

entered an order granting Jean's Petition for Injunction Against Harassment.  *See*

Defs'. Ex. D.  The Injunction forbade Wintermantel-Baptista from:

> A.   Contacting, threatening, or harassing [Jean].
> "Contacting" is defined to include but is not limited to
> the telephone, mail, facsimile, pager, electronic mail,
> internet, etc.
> B.   Contacting, threatening, or harassing any person(s)
> residing at [Jean's] residence.
> C.   Entering and/or visiting [Jean's] residence, including
> yard and garage, and/or place of [Jean's] employment.

*Id.* at 2.  Wintermantel-Baptista apparently left the courtroom prior to the

conclusion of the hearing proceedings.  On March 17, 2004, Wintermantel-Baptista

---

[2] Jean was arrested on February 4, 2004 for criminal property damage.  Lipka Decl. ¶ 26.

drove to Jesse's place of work (next to Jean's home) to obtain her employment records.  When there, she claims that she approached the man working in the yard of the house next door to Jean's home, believing it to be Jesse's employer.  In fact, it was her brother-in-law, Robert.  Jean and Robert complained to the police that Wintermantel-Baptista was violating the terms of the Injunction.  Adriance and Lipka responded to the call and Lipka arrested Wintermantel-Baptista for violating the Injunction.[3]  *See* Lipka Decl. ¶ 8.

Wintermantel-Baptista alleges that Adriance and Lipka used excessive force in relation to the March 17, 2004 arrest.  She claims that Adriance and Lipka left her in the back of the police car with the windows up in the hot sun and that she was "getting like an anxiety attack."  Defs' Ex. H at 157.  Although she could not accurately estimate how long she was in the police vehicle, Lipka states that she sat in the police car for only five to ten minutes while Lipka obtained the written statements of Jean and Robert, and that Lipka never heard Wintermantel-Baptista yell, scream, or otherwise indicate that she was hot or could not breathe.  Lipka Decl. ¶¶ 10-13, 15.  Lipka further states that Wintermantel-Baptista did not complain of heat-related problems or request medical attention while in his custody

---

[3] In an October 23, 2006 Order, this court found that Wintermantel-Baptista's arrest was based on probable cause and dismissed her claim of unlawful arrest under the Fourth Amendment.

or upon arrival at the Wahiawa police station.  *Id.* ¶ 16.  Wintermantel-Baptista

herself admits that she never requested medical attention.  Defs'. Ex. H at 157.

### 5.    *Repossession of Car*

While Lipka was processing Wintermantel-Baptista's March 17, 2004

arrest, Wintermantel-Baptista alleges that she heard Adriance speaking on his cell

phone, stating, "I got it right here.  I want the rims."  Wintermantel-Baptista Decl.

¶ 24.   A tow truck then arrived with the paperwork to repossess Wintermantel-

Baptista's car.[4]  Wintermantel-Baptista alleges that Adriance and Lipka

participated in the repossession of the car and that they delivered the car to Larson.

However, the record shows that the Bank of Hawaii had been monitoring

Wintermantel-Baptista in order to repossess her car for non-payment, and that it

was Aloha Auto Auction Collateral -- not the City Defendants -- that acted on

behalf of the Bank of Hawaii to repossess the car.  *See* Defs'. Ex. E.  Wintermantel-

Baptista herself admits that her car payments were in arrears.[5]  Wintermantel-

Baptista Decl. ¶ 27.

\\\

---

[4] Although title to the car was in Larson's name for insurance purposes, Wintermantel-Baptista made the monthly car payments.

[5] Wintermantel-Baptista stated that she thought that the term of her car note was five years and that the car had been fully paid off, but in reality the car note was for a duration of six years.  Wintermantel-Baptista faults Larson -- the registered owner of the car -- for not telling her that Bank of Hawaii was threatening to repossess the car.

### 6.   *Issuance of Six Tickets for Non-Moving Violations*

Wintermantel-Baptista also alleges that on July 28, 2004, Adriance and six other police officers waited for her outside of the State District Court to give her six traffic tickets for non-moving violations.  Wintermantel-Baptista neither contests the validity of these tickets nor asserts that she was innocent of the underlying violations.

### 7.   *Placement of Children in Foster Care*

Wintermantel-Baptista alleges that Adriance and Lipka threatened to place her children in CPS custody as a way to intimidate or silence her into not filing complaints against Jesse and Jean.  Following her February 4, 2004 arrest, for example, Wintermantel-Baptista states that Adriance told her that her children would be taken into custody by CPS unless someone could pick them up.  On July 28, 2004 at the time that Wintermantel-Baptista was being issued six tickets for non-moving violations, Wintermantel-Baptista alleges that Adriance stated "your kids would be better off with someone else besides you."

Wintermantel-Baptista also alleges that, instead of investigating her complaints and reports of spousal abuse, Adriance and Lipka engaged with others in a conspiracy to remove her children from her care and place them into foster care.  For example, Wintermantel-Baptista claims that rather than taking action

against Jesse in response to Wintermantel-Baptista's April 20, 2005 spousal abuse report, Wintermantel-Baptista alleges that Adriance filed a report with CPS on April 25, 2005 claiming that Wintermantel-Baptista's children were not attending school due to violence in the home.  On May 19, 2005, shortly after she filed another report of spousal abuse regarding the May 15, 2005 incident, Wintermantel-Baptista alleges that Adriance or another officer filed another complaint with CPS alleging this time that Wintermantel-Baptista was using drugs.

On May 27, 2005, a Petition for temporary foster care and safe family home report was filed alleging that Wintermantel-Baptista's children were missing school and that Wintermantel-Baptista was using drugs.  The children were removed from Wintermantel-Baptista's care and placed into foster care from May 23, 2005 to October 10, 2005.  During their time in foster care, Wintermantel-Baptista alleges that the children were subjected to physical and emotional abuse and did not attend school from May 23, 2005 until the end of the school year.

## B.        Procedural Background

Wintermantel-Baptista filed a Complaint in the District Court of the First Circuit, Wahiawa Division, State of Hawaii against Jean, Robert, Larson, Adriance, Lipka, and the City and County of Honolulu.  The case was removed to this court.  On October 21, 2005, the City Defendants moved to dismiss

Wintermantel-Baptista's Complaint.  A hearing was held on January 17, 2006, and the parties consented to denying the motion to dismiss without prejudice so as to allow Wintermantel-Baptista an opportunity to amend her Complaint.

The Plaintiffs filed a First Amended Complaint on February 22, 2006. The City Defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgment, on July 12, 2006; the Plaintiffs filed an Opposition and a Counter Motion for Remand on August 31, 2006.  The court granted in part and denied in part the City Defendants' Motion to Dismiss, or in the Alternative for Summary Judgment and denied the Plaintiffs' Counter Motion for Remand on October 23, 2006.  *Wintermantel-Baptista v. Hanohano et al.*, 2006 WL 3078922 (D. Haw. Oct. 23, 2006).

The court granted the City Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment on:

> (a) the Plaintiffs' Fourth Amendment claim (based on the March 17, 2004 arrest);
> (b) the Plaintiffs' corresponding claims for false arrest, false imprisonment, and malicious prosecution;
> (c) the Plaintiffs' Fifth Amendment claim for due process and equal protection violations;
> (d) the Plaintiffs' article I, section 7 claim (to the extent the claim is based on the March 17, 2004 arrest);
> (e) the Plaintiffs' claim for negligent infliction of emotional distress; and

11

      (f) the Plaintiffs' claim for respondeat superior liability
      against the City based on the § 1983 claims against
      Officers Adriance and Lipka[.]

October 23, 2006 Order at 31-32.

On January 9, 2007, the City Defendants filed the instant Motion for Summary Judgment as to all remaining claims. Plaintiffs filed their Memorandum in Opposition on February 28, 2007. The City Defendants filed their Reply on March 8, 2007. The court heard oral arguments on March 13, 2007.

## III. <u>STANDARD OF REVIEW</u>

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The burden initially lies with the moving party to show that there is no genuine issue of material fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). The relevant question is not whether

there is a disagreement as to any fact, but "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## IV.  ANALYSIS

Plaintiffs seek relief under 42 U.S.C. §§ 1983 and 1985(3).  To succeed on a § 1983 claim, Wintermantel-Baptista must prove by a preponderance of the evidence that the City Defendants deprived her and her children of their constitutional rights while acting under the color of state law.  *See Gritchen v. Collier*, 254 F.3d 807, 812 (9th Cir. 2001); *L.W. v. Grubbs*, 974 F.2d 119, 120 (9th Cir. 1992).  To sustain a conspiracy claim under § 1985(3) predicated on a § 1983 allegation, Wintermantel-Baptista must show (1) an agreement or meeting of the minds by the defendants to violate her constitutional rights; (2) a causal relationship between the alleged acts done in furtherance of the conspiracy and the resulting injuries; (3) a § 1983 deprivation of rights predicated on the same

allegations; and (4) invidiously discriminatory, racial or class-based animus. *See*

*Calderia v. County of Kauai*, 866 F.2d 1175, 1181-82 (9th Cir. 1989).

The court's first step in analyzing § 1983 claims is to "identify the

exact contours of the underlying right said to have been violated." *County of*

*Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) (citations omitted).  As

mentioned in its October 23, 2006 Order, the court has encountered some

difficulty in completing this preliminary step as Plaintiffs' First Amended

Complaint sets forth a litany of alleged wrongdoing but fails to connect the recited

facts to specific legal theories.  After reviewing the additional round of briefing;

consulting with the parties during the March 13, 2007 hearing; and construing

Wintermantel-Baptista's First Amended Complaint as broadly as possible, the

court has ascertained that the remaining claims include:  Fourth Amendment

claims (for the seizure of Wintermantel-Baptista's car, the placement of her

children in foster care, and the claim of excessive force during the March 17, 2004

arrest); a Fifth Amendment claim (for the taking of Wintermantel-Baptista's car);

and Fourteenth Amendment Equal Protection claims (for the threats to arrest

Wintermantel-Baptista for outstanding traffic warrant, simultaneous issuance of

six tickets for non-moving violations, conspiracy to remove children from the

home, failure to respond to complaints of spousal abuse, and failure to provide a police escort for a post-eviction move).

**A.        Qualified Immunity**

In response to Plaintiffs' claims, Adriance and Lipka claim the defense of qualified immunity.  "[Q]ualified immunity shields [police officers] from suit for damages if 'a reasonable officer could have believed [the defendant's] arrest to be lawful, in light of clearly established law and the information the arresting [police officer] possessed.'"  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *see also Portland v. Bagley*, 988 F.2d 868, 871 (9th Cir. 1993) (noting that a police officer is immune from suit if, "in light of clearly established principles governing the conduct in question, the officer objectively could have believed that his conduct was lawful.").

The Ninth Circuit employs a three-part test in determining whether police officers are entitled to the protection of the qualified immunity doctrine. *See Skoog v. County of Clackamas*, 469 F.3d 1221, 1229 (9th Cir. 2006).[6]  The court must first answer a threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer[s'] conduct

---

[6] Other Ninth Circuit cases have applied a two-part test, conflating the second and third prongs of the test.  *See, e.g., Preschooler II  v. Clark County School Bd. of Trustees*, 479 F.3d 1175 (9th Cir. 2007); *Boyd v. Benton County*, 374 F.3d 773 (9th Cir. 2004).  Whether applying a two or three-part test, the court considers the same factors.

violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If the answer is no, qualified immunity applies to the conduct.  If the answer is yes, the court proceeds to the second level of analysis.

The second prong of the qualified immunity analysis determines whether the right allegedly violated was "clearly established" at the time the officer acted.  *Id.* at 201-02.  This analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* at 201.  A claim of a constitutional violation in a generalized sense is insufficient; instead, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Thus, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202.  If the answer to this question is no, qualified immunity applies to the conduct.  If the answer is yes, the court turns to the third and final prong.

The final question the court must ask is "whether the officer[s] could have believed, 'reasonably but mistakenly . . . that [their] conduct did not violate a

clearly established constitutional right.'"  *Skoog*, 469 F.3d at 1229 (*quoting*

*Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001)).  Thus, the

doctrine of qualified immunity "allows ample room for reasonable error on the

part of the official.  It encompasses both mistakes of fact and mistakes of law."

*Rudebusch v. Hughes*, 313 F.3d 506, 514 (9th Cir. 2002) (citations, brackets, and

internal quotation signals omitted).  However, "qualified immunity will not protect

the plainly incompetent or those who knowingly violate the law."  *Preschooler II*

479 F.3d at 1180; *see also Crow v. Montgomery*, 403 F.3d 598, 602 (8th Cir.

2005) (noting that police officers "are not liable for bad guesses in gray areas; they

are liable for transgressing bright lines.").

            The court now applies this framework to the Plaintiffs' Fourth, Fifth,

and Fourteenth Amendment claims.

## B.      Fourth Amendment Claims

            Liberally construed, Wintermantel-Baptista's First Amended

Complaint can be read to allege Fourth Amendment claims for improper seizures

of her car and children and excessive punishment in the course of her March 17,

2004 arrest.  The court considers each incident in turn.

\\\

\\\

### 1.   *Seizure of Wintermantel-Baptista's Vehicle*

Wintermantel-Baptista alleges that the City Defendants unlawfully repossessed her car on March 17, 2004 and have wrongfully withheld possession of her car since that time. *See* First Am. Compl. ¶ 16-17. The impoundment of a vehicle by government actors constitutes a seizure under the Fourth Amendment. *See United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986); *United States v. Bagley*, 772 F.2d 482, 490 (9th Cir. 1985). The record, however, demonstrates that it was Aloha Auto Auction Collateral Recovery acting on behalf of the Bank of Hawaii -- and not the City Defendants -- which pursued and repossessed Wintermantel-Baptista's car because Wintermantel-Baptista had defaulted on her car payments. *See* Defs'. Ex. E. The Bank of Hawaii then sold Wintermantel-Baptista's car at auction to collect the outstanding amount due. *See* Defs'. Ex. E at 20-22. Indeed, Wintermantel-Baptista herself acknowledges that her car payments were in arrears. Wintermantel-Baptista Decl. ¶ 27. The City Defendants cannot be held liable for the lawful actions of the Bank of Hawaii. As such, Wintermantel-Baptista has failed to show that the City Defendants violated a constitutional right through their conduct. The court therefore GRANTS the City

Defendants' Motion for Summary Judgment as to Wintermantel-Baptista's Fourth

Amendment claim related to the repossession of her car.[7]

### 2. *Placement of Children in Foster Care*

Wintermantel-Baptista alleges that Adriance and Lipka conspired

with others to have her children taken away from her and placed into foster care.

Specifically, Wintermantel-Baptista alleges that Lipka threatened to have CPS

take her children into protective custody if Wintermantel-Baptista could not find

someone to take care of them while she was in custody (and attempting to post

bail) on February 4, 2004; that Adriance told her on July 28, 2004 -- when she was

being issued six non-moving traffic tickets outside of the Wahiawa District Court

of the State of Hawaii -- that her children would be "better off with someone else";

and that Adriance filed false reports with CPS that her children were missing

school due to domestic violence and that she was using drugs.  First Am. Compl.

¶¶ 13, 20, 22, 23.  Wintermantel-Baptista alleges that, as a result of these actions, a

Petition for temporary foster custody and safe family home report was filed and

_____

[7] The City Defendants also argue that summary judgment is proper because the car was registered to Larson, not Wintermantel-Baptista.  In response, Wintermantel-Baptista argues that she was the rightful owner as she had purchased and made the payments on the car, and that Larson was the registered owner only for insurance purposes.  Given its finding that the City did not unlawfully seize the car, the court need not consider whether a person who has paid for a car registered in someone else's name has standing to protest a repossession of that car.

Wintermantel-Baptista's children were placed in foster care from May 23, 2005 to October 10, 2005.  First Am. Compl. ¶¶ 25, 27.

The record simply does not support Wintermantel-Baptista's claim that Adriance and Lipka engaged in activity resulting in the placement of her children in foster care.  Indeed, contrary to the assertions in Wintermantel-Baptista's First Amended Complaint, the admissible evidence demonstrates that neither Adriance nor Lipka were involved with removing Wintermantel-Baptista's children from her care:  Officer D. Evangelista, and not Adriance, filed the reports alleging that Wintermantel-Baptista's children were missing school due to domestic violence and that Wintermantel-Baptista was using drugs.  *See* Defs'. Exs. F & G.  Numerous additional reports were filed regarding the welfare of Wintermantel-Baptista's children, including reports by Officers Edward Ah Chong and Brian T. Bascar.  *See* Defs'. Exs. I, J, K & L.  These police reports were based on claims from other individuals, including at least one filed by CPS, that Wintermantel-Baptista might be neglecting her children.[8]  *See* Defs'. Ex. F.

---

[8]  CPS's claim was based on an unidentified caller who reported the threat of abuse and neglect due to domestic violence; that the children had not been in school; and that the school had not heard from Wintermantel-Baptista.  *Id.*  Wintermantel-Baptista alleges -- without any form of substantiation -- that Adriance was the unidentified caller.  *See* First Am. Compl. ¶ 22.  However, Adriance denies placing any such call and states that he was never involved in any plans to remove Wintermantel-Baptista's children from her custody.  Adriance Decl. ¶¶ 13-14, 17.

In her declaration, Wintermantel-Baptista states that Lipka "threatened" to have CPS take the children when Wintermantel-Baptista was in police custody on February 4, 2004.  Wintermantel-Baptista Decl. ¶ 12.  Lipka admits that he told Wintermantel-Baptista that either she had to arrange for someone to pick her children up or he would arrange for CPS to take protective custody because the police station did not have the means to supervise or care for the children.  Lipka Decl. ¶ 29.  Lipka then contacted CPS to arrange for them to watch the children, but such care was not ultimately necessary as Wintermantel-Baptista posted bail approximately one hour later.  Lipka Decl. ¶ 30; Wintermantel-Baptista Decl. ¶ 13.   Under these circumstances, viewing the evidence in the light most favorable to Wintermantel-Baptista, the record does not support Wintermantel-Baptista's claim that Lipka (or Adriance) was improperly threatening her or her children.  Instead, Lipka simply relayed an unquestionable truth -- that Wintermantel would either have to arrange for someone to get her children or he would have to call CPS.  Other than this incident, Lipka states that he did not contact CPS regarding Wintermantel-Baptista's children and was never involved in any plans to remove the children from Wintermantel-Baptista's care.  Lipka Decl. ¶¶ 31-32.  In his declaration, Adriance likewise states that he never

contacted CPS and was never involved with any efforts to remove Wintermantel-Baptista's children from her custody.  Adriance Decl. ¶¶ 13-14.

Based on this record, Wintermantel-Baptista has failed to set forth facts sufficient to show that Adriance and Lipka improperly threatened her or manufactured false accusations and reports so that her children would be taken from her care.  Nor has she shown that there was an unlawful conspiracy. Wintermantel-Baptista's unsupported speculation that Adriance made anonymous phone calls to CPS is not enough to show an unlawful conspiracy.  The court GRANTS the City Defendants' Motion for Summary Judgment as to Wintermantel-Baptista's Fourth Amendment claim relating to the placement of her children in foster care.

### 3.    Treatment During March 17, 2004 Arrest

Wintermantel-Baptista alleges that Lipka used excessive force during the March 17, 2004 arrest by placing her in a hot police car with the windows rolled up and air conditioner off[9] while Adriance and Lipka talked and joked with Robert and Jean.  Wintermantel-Baptista stated that the delay "seemed liked more than five minutes" but that she didn't know whether it was less than ten minutes.

---

[9] Lipka states that the air conditioner in the police car was turned on high and the windows rolled halfway down.  Lipka Decl. ¶¶ 11-13.  However, the court construes the record in the light most favorable to Wintermantel-Baptista and as such accepts as true her version of the events.

Defs'. Ex. H at 157.  Lipka recalled that the delay lasted for five to ten minutes and was necessary to give him the chance to obtain written statements from Jean and Robert regarding the incident.  Lipka Decl. ¶¶ 11-13.  Wintermantel-Baptista admits that she never lost consciousness and that she did not at any time request medical attention as a result of this incident.  Defs'. Ex. H at 157.  Wintermantel-Baptista does not claim that she communicated her discomfort to the police and Lipka states that he never heard Wintermantel-Baptista yell or scream that she was hot, although he did hear her protest that she was innocent.  Lipka Decl. ¶ 15.

Plaintiffs' excessive force claim is evaluated under the Fourth Amendment's objective reasonableness standard.  *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Motley v. Parks*, 432 F.3d 1072, 1088 (9th Cir. 2005).  To evaluate excessive force claims, the court balances "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake" under the circumstances as they existed at the time.  *Graham*, 490 U.S. at 396.

Post-arrest detention in a hot, unventilated police vehicle for an extended period of time can constitute excessive force.[10]  For example, the

---

[10] Fourth Amendment excessive force claims can be based on post-arrest police conduct. Thus, a claim of the use of excessive force by a police officer during transportation of an arrestee states a valid § 1983 claim.  *See Fontana v. Haskin*, 262 F.3d 871, 878 (9th Cir. 2001).

Supreme Court held that prison officials violated the Eighth Amendment by exposing a prisoner to the sun for seven hours while handcuffed to a hitching post, subjecting the prisoner to thirst, taunting, and deprivation of bathroom breaks. *Hope v. Pelzer*, 536 U.S. 730, 738 (2002). Applying *Hope*, the Sixth Circuit found that a post-arrest detention in a police vehicle "with the windows rolled up in ninety degree heat for three hours constituted excessive force" under the Fourth Amendment. *Burchett v. Kiefer*, 310 F.3d 937, 945 (6th Cir. 2002). The Fifth Circuit, however, found that a post-arrest detention for approximately one-half hour in an unventilated police vehicle in the sun was not in violation of the Fourth Amendment. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001); *see also Esmont v. City of New York*, 371 F. Supp. 2d 202, 214 (S.D.N.Y. 2005) (finding no Fourth Amendment violation where a suspect was left in police vehicle for ten minutes in a hot car but suffered no injuries).

Viewing the evidence in the light most favorable to Wintermantel-Baptista, she was detained in the squad car in the hot sun with the windows rolled up for somewhere between five to ten minutes. During this period, Wintermantel-Baptista did not complain and she does not allege now that she was injured. Under these circumstances, Wintermantel-Baptista has not proven a Fourth Amendment

24

violation.  The court therefore GRANTS the City Defendants' Motion for Summary Judgment as to Wintermantel-Baptista's Fourth Amendment excessive force claim.

## C.           Fifth Amendment Takings Claim

Wintermantel-Baptista's First Amended Complaint also raises a Fifth Amendment claim for the wrongful taking of her car without payment of just compensation.  This claim fails for the same reasons discussed *supra* Part IV.B.1., namely that the car was not repossessed by state actors, but by an agent of the Bank of Hawaii.  The court therefore GRANTS the City Defendants' Motion for Summary Judgment as to Wintermantel-Baptista's Fifth Amendment claim.

## D.           Fourteenth Amendment Equal Protection Clause Claims

Wintermantel-Baptista claims that the City Defendants conspired to deprive her and her children of the equal protection of the laws.  First Am. Compl. ¶¶ 7-8.  To support this claim, Wintermantel-Baptista argues that she is a "class of one" -- the law was applied in a discriminatory manner against her individually as opposed to a similarly situated class of individuals.  *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (noting that the equal protection guarantee protects individuals who constitute a "class of one").  Wintermantel-Baptista also appears to allege that the classification was based at least partly on race, namely that she is a "mainland haole" and that Adriance, Lipka, Jesse, Jean, and Robert are

25

all "local."  Wintermantel-Baptista offers no evidence that Adriance or Lipka ever exhibited any type of racial animus towards her.[11]  Instead, Wintermantel-Baptista only offers evidence that the City Defendants may be friendly with Jesse, Jean, and Robert.[12]  The court therefore finds that the City Defendants' classification -- if it exists at all -- is based on individualized distaste for Wintermantel-Baptista, not race.

To succeed on a "class of one" equal protection claim where the state action does not implicate a fundamental right or a suspect classification, Wintermantel-Baptista must show that she was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  If a class of one claim is based on a claim of selective law enforcement, a plaintiff must show that the articulated rational basis is a pretext for an impermissible motive.  *See Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004);

---

[11]  Jean allegedly used a racial epithet on March 17, 2004.  Wintermantel-Baptista has offered no evidence to indicate that the City Defendants shared this supposed hostility.  Her request that the court impute this racial animosity to the City Defendants is without any basis in fact or law.

[12]  Wintermantel-Baptista appears to argue that the police treated her differently from Jean on March 17, 2004, demonstrating hostility or bias against her.  The facts, however, show that both Wintermantel-Baptista and Jean were arrested on March 17, 2004.  No hostility or bias can be discerned by these dual arrests.

*Armendariz v. Penman*, 75 F.3d 1311, 1327 (9th Cir. 1996) (*en banc*); *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187-88 (9th Cir. 1995).

As to all of her class of one claims, Wintermantel-Baptista has failed to provide any evidence that she was "treated differently from others similarly situated." In fact, in her Memorandum in Opposition to the Motion for Summary Judgment (at page 17), she acknowledges it "is true" that she can provide no evidence that others in her position were treated any differently than her or her children; instead, she "respectfully submit[s] that it should not be necessary to present any such evidence." Pls. Mem. In Opp'n. 17. It is for a higher court, not this one, to change the standards governing a class of one claim under the Equal Protection Clause.

Wintermantel-Baptista alleges that Adriance and other police officers "surrounded and stopped" Wintermantel-Baptista while she was leaving a court appearance for the sole purpose of citing her for several non-moving traffic violations.[13] First Am. Compl. ¶ 19. Wintermantel-Baptista has not demonstrated that the tickets were unwarranted, that they were improperly issued, or that she was

---

[13] Wintermantel-Baptista states that she was cited "for several traffic violations none of which was a moving violation that would give probable cause to stop Plaintiff MOTHER." First Am. Compl. ¶ 19. There is nothing on the record to show that Wintermantel-Baptista was arrested or detained for any period of time, only that she was delayed for the amount of time it took to issue the tickets.

treated differently than any other person with outstanding tickets.  Further, the court finds that the actions of the Officers were rational and will not conduct further inquiry regarding their motives when lawfully issuing tickets.  *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004); *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006); *see also Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006) ("A malicious prosecution claim requires, *inter alia*, a lack of probable cause.  Because the police had probable cause to arrest [the plaintiff], his malicious prosecution claim fails.").

Wintermantel-Baptista also alleges that police officers engaged in an unlawful conspiracy to fail to respond to her complaints of spousal abuse in July 2003, April 2005, and May 2005.  *See* First Am. Compl. ¶¶ 10, 21 & 23.  She offers no evidence that the police were less responsive to her complaints or reports than they were to those filed by other abused women.  In fact, a warrant for Jesse's arrest was issued on May 27, 2005.

Finally, Wintermantel-Baptista alleges that the police conspired to deny her a police escort -- apparently provided for by court order -- to collect her belongings from her former residence following her eviction by Larson.  *See* First

Am. Compl. ¶ 11. Here, too, Wintermantel-Baptista fails to demonstrate that the police intentionally treated her differently than they did others.[14]

**E.       State Law Claims**

In its discretion, a district court may decline to exercise supplemental jurisdiction over state law claims when all remaining federal claims have been dismissed. 28 U.S.C. § 1367(c)(3). In determining whether to exercise supplemental jurisdiction or remand to state court, the court considers several factors, including judicial economy, comity, convenience and fairness. *Trs. of Constr. Indus. & Laborers Health v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925-26 (9th Cir. 2003) (citation omitted). Among other considerations, "[n]eedless decisions of state law should be avoided." *Id.* "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of the factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988).

_____

[14] Although not raised in her First Amended Complaint or pleadings, Wintermantel-Baptista's claims could be liberally construed to include a claim of retaliation based on the exercise of First Amendment rights. Wintermantel-Baptista appears to allege that she was arrested on February 4, 2004 in retaliation for filing a complaint against Jean. She also appears to argue that her children were placed in foster care in retaliation for her filing of complaints against Jesse and Jean. Even if she did raise these claims, the officers would be entitled to qualified immunity as the "right to be free from police action motivated by retaliatory animus but for which there was probable cause" was not clearly established at the time of her arrest or when her children were removed to foster care. *See Skoog*, 469 F.3d at 1235.

Plaintiffs have alleged various state torts and state constitutional violations. Although the state constitutional claims mirror the federal constitutional claims, Hawaii state courts may give broader protection under its constitution than the federal constitution. *See State v. Heapy*, 113 Haw. 283, 151 P.3d 764 (Haw. 2007). The court finds that the tort and state constitutional violations should be addressed in the first instance in state, not federal, court.[15] As a result, the court REMANDS the state law claims to the District Court of the First Circuit, Wahiawa Division, State of Hawaii.

---

[15] In their memorandum, the City Defendants cite the following passage from *Ruf v. Honolulu Police Dep't*, 89 Haw. 315, 322 n.5, 972 P.2d 1081 (1999) for the proposition that they owed a duty to the public and not individuals in reference to the state-law negligence claim:

> "Under the common law rule known as the 'public duty doctrine,' a municipality and its agents are deemed to act for the benefit of the general public rather than specific individuals. Thus, ordinarily, the municipality or its agents may not be held liable to specific individuals for the failure to furnish them with public protection."

*Id.* (citations omitted). The City Defendants' treatment of *Ruf* ends there, omitting the continuation of the note in which the Hawaii Supreme Court explicitly declines to adopt the 'public duty doctrine' rule, leaving the question open under Hawaii law. As the Court wrote,

> Hawaii's appellate courts have never employed the term 'public duty doctrine' to describe the *Freitas* rule. Inasmuch as the only question before this court in the present case is whether there is liability in the context of the release of a detainee by the police, it is unnecessary for us to address, as a global matter, the scope of public agents' liability generally stemming from acts performed "for the benefit of the general public." Accordingly, we do not refer to the *Freitas* rule herein as the "public duty doctrine."

*Id.*

# V.  CONCLUSION

The conduct in this case did not deprive Wintermantel-Baptista or her children of their federal constitutional rights and Wintermantel-Baptista thus may not hold Adriance, Lipka, or the City and County of Honolulu liable for any damages under 42 U.S.C. §§ 1983 or 1985(3).  The court therefore GRANTS the City Defendants' Motion for Summary Judgment as to Wintermantel-Baptista's Fourth, Fifth, and Fourteenth Amendment claims.  The court REMANDS the remaining state law claims to the District Court of the First Circuit, Wahiawa Division, State of Hawaii.

As this order disposes of all outstanding matters in this case, the Clerk of the Court is instructed to close the case file.

IT IS SO ORDERED.

Dated: Honolulu, Hawaii, April 20, 2007.


J. Michael Seabright
United States District Judge


*Wintermantel-Baptista v. Hanohano et al.*, Civ. No. 05-00485JMS/LEK, Order Granting in Part and Denying in Part Defendants Thomas Adriance, Adam Lipka, and the City and County of Honolulu's Motion for Summary Judgment